246 P.3d 177 (2010)
170 Wn.2d 691
STATE of Washington, Respondent,
v.
James Michael MAROHL, Petitioner.
No. 83570-5.
Supreme Court of Washington, En Banc.
Argued September 21, 2010.
Decided December 30, 2010.
*178 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Petitioner.
Edward P. Lombardo, Monty Dale Cobb, Mason County Prosecuting Attorney's Office, Shelton, WA, for Respondent.
SANDERS, J.
¶ 1 The State charged James Michael Marohl with second degree assault or, in the alternative, third degree assault after he placed Joseph Rex Peterson in a choke hold and caused Peterson to fall to the floor. Peterson's impact with the ground scraped and bruised his face, and his prosthetic arm broke off above the elbow. A jury found Marohl not guilty of second degree assault but guilty of third degree assault under RCW 9A.36.031(1)(d). Marohl appealed his conviction, claiming insufficient evidence existed to show he committed third degree assault because the floor was not an "instrument or thing likely to produce bodily harm" under RCW 9A.36.031(1)(d). The Court of Appeals affirmed the conviction. We granted review to decide whether a floor is an instrument or thing under the third degree assault statute. We reverse the Court of Appeals.

FACTS
¶ 2 On June 27, 2007, Peterson was celebrating at a bar in the Little Creek Casino in Mason County. Over the course of the evening, he became drunk and the bartender cut him off from further service of alcohol.
¶ 3 Peterson walked up to the bar to get a glass of water. A friend tapped him on the back, and Peterson followed her, knocking over a chair as he moved to the opposite end of the bar. Sean McFadden, a friend of Marohl's, stopped Peterson to complain that the chair had almost hit McFadden's wife and to ask Peterson to be more careful. Peterson put his arm around McFadden and started to apologize. McFadden attempted to remove Peterson's arm several times, but Peterson kept his arm around McFadden.
¶ 4 Observing Peterson and McFadden, Marohl, a mixed martial arts fighter, got up from his table and stepped between the two men. Marohl took Peterson's arm and pushed it back. Marohl then placed his arm around Peterson's neck in a choke hold and started to walk Peterson toward the door.
¶ 5 The State introduced surveillance tape footage of the incident at trial, but witness testimony conflicted. Jesse Kollman, a friend of Peterson's, testified Peterson waved his arms in the air in a "defensive move" to get Marohl "off his back." 1 Report of Proceedings (RP) (Jan. 30, 2008) at 78. Kollman testified Peterson lost consciousness, and Marohl "drove" or "rode" Peterson into the ground. Id. at 78-79. Another witness testified Marohl placed an arm around Peterson's neck to restrain him and walk him out of the bar. 3 RP (Jan. 31, 2008) at 265. Defense witnesses testified Peterson tripped and Marohl tried to keep him upright. Id. at 203, 231. In light of Marohl's mixed martial arts training, both sides presented expert testimony evaluating the type of choke hold he placed on Peterson and whether Marohl choked Peterson to restrain him or to render him unconscious.
¶ 6 Both men fell to the floor. Either the choke hold or the impact with the ground rendered Peterson unconscious for a couple of minutes. The impact with the casino floor caused Peterson to suffer bruises and scrapes on his face, and his prosthetic arm broke off above the elbow joint. Marohl got to his feet and walked away but then returned to try to help Peterson off the ground.
¶ 7 The State charged Marohl with second degree assault or, in the alternative, third degree assault. The jury instructions directed that a person commits third degree assault "when he or she, with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." 4 RP (Feb. 1, 2008) at 437. The jury was instructed that the prosecutor must prove beyond a reasonable doubt the elements of third degree *179 assault, including "[t]hat the physical injury was caused by a weapon or other instrument or thing likely to produce bodily harm." Id. at 438. The instructions did not define "instrument or thing likely to produce bodily harm," but the prosecutor described the element in his closing argument:
The instrument or thing here, obviously, is a combination of the arm lock, the choke lock, and taking him into the ground and slamming him into the floor. There's no requirement thatit's a broad thing. Instrument or thing. That's all in your within your province to decide those are the instruments or things. There isn't a limited number of things in the law by which an assault third can be committed and no other. It's a very broad definition. Any instrument or thing. So, whether it was kick him with a boot, which isn't here, or any other matter you can think of, you simply take the facts that you have and say, what instrument or thing did he use with criminal negligence to inflict this harm.
Id. at 449. The defense attorney did not object.
¶ 8 The jury found Marohl not guilty of second degree assault and guilty of third degree assault. Marohl appealed his conviction, claiming insufficient evidence existed to show he injured Peterson by means of an instrument or thing under RCW 9A.36.031(1)(d). The Court of Appeals affirmed the conviction. State v. Marohl, 151 Wash.App. 469, 475, 213 P.3d 49 (2009). We granted Marohl's petition for review. State v. Marohl, 167 Wash.2d 1020, 224 P.3d 774 (2010).
¶ 9 The issue is whether Marohl employed an instrument or thing under RCW 9A.36.031(1)(d) when he caused bodily harm by forcing Peterson to the ground. Holding that the floor was an instrument or thing for purposes of the third degree assault statute, the Court of Appeals affirmed Marohl's conviction. We reverse and, based on the facts in this case, conclude the floor was not an "instrument or thing likely to produce bodily harm" under RCW 9A.36.031(1)(d).

ANALYSIS
¶ 10 Whether a floor can be an "instrument or thing likely to produce bodily harm" for purposes of third degree assault is a matter of first impression. The meaning of a statute is a question of law we review de novo. Delyria v. State, 165 Wash.2d 559, 562, 199 P.3d 980 (2009).

Under the plain meaning of RCW 9A.36.031(1)(d), the floor was not an "instrument or thing likely to produce bodily harm."
¶ 11 The principles of due process require the State to prove beyond a reasonable doubt every essential element of a crime. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). To determine whether there is sufficient evidence to support a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. State v. Engel, 166 Wash.2d 572, 576, 210 P.3d 1007 (2009).
¶ 12 Whether the casino floor was an instrument or thing under RCW 9A.36.031(1)(d) depends on statutory construction. Our "fundamental objective in construing a statute is to ascertain and carry out the legislature's intent." Arborwood Idaho, LLC v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004). We first look to the plain meaning of a statute, and if the plain language is subject to only one interpretation, our inquiry ends. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). Where statutory language is unambiguous, we accept the legislature means exactly what it says. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).
¶ 13 Washington's third degree assault statute provides, in pertinent part:
(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
. . .
(d) With criminal negligence, causes bodily harm to another person by means of *180 a weapon or other instrument or thing likely to produce bodily harm.
RCW 9A.36.031.[1] The statute does not define "other instrument or thing likely to produce bodily harm."[2]
¶ 14 A term left undefined in a statute is given its plain and ordinary meaning as defined in a standard dictionary. State v. Sullivan, 143 Wash.2d 162, 174-75, 19 P.3d 1012 (2001). Thus, an "instrument" is "a means whereby something is achieved, performed, or furthered." Webster's Third New International Dictionary 1172 (2002). More narrowly, an "instrument" is a "utensil" or "implement." Id. A "thing" is "an entity that can be apprehended or known as having existence in space or time," "an inanimate object," or "whatever may be possessed or owned or be the object of a rightdistinguished from person." Id. at 2376.
¶ 15 A floor is a thingit is "an entity" and "an inanimate object." A floor may also be an instrumentit may be an "implement," depending on the ends intended to be achieved or furthered.
¶ 16 The question, then, is whether the casino floor was an instrument or thing "likely to produce bodily harm." See RCW 9A.36.031(1)(d). By including the phrase "likely to produce bodily harm," the legislature limited the class of instruments or things that give rise to a charge of third degree assault under RCW 9A.36.031(1)(d). See Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) ("Statutes must be interpreted and construed so that all the language is given effect, with no portion rendered meaningless or superfluous."). "[L]ikely" means "of such a nature or so circumstanced as to make something probable." Webster's, supra, at 1310. Only assaults perpetrated with an object likely to produce harm by its nature or by circumstances fall within the subsection's purview.
¶ 17 Another canon of statutory construction further limits the definition of an instrument or thing under RCW 9A.36.031(1)(d). Where general words follow specific words, "the general words are construed to embrace a similar subject matter" as the specific words under the ejusdem generis canon of statutory construction. Burns v. City of Seattle, 161 Wash.2d 129, 149, 164 P.3d 475 (2007); see also Dean v. McFarland, 81 Wash.2d 215, 221, 500 P.2d 1244 (1972) ("[S]pecific terms modify or restrict the application of general terms where both are used in sequence."). Thus, an "instrument or thing likely to produce bodily harm" under RCW 9A.36.031(1)(d) must be similar to a weapon. The assault statute does not define "weapon," but the dictionary definition is "an instrument of offensive or defensive combat: something to fight with." Webster's, supra, at 2589. Where the defendant causes the victim to impact the floor and makes no effort to proactively use the floor to injure the victim, the defendant has not used the floor like a weapon because he has not used it as an "instrument of ... combat" or "something to fight with." The language of RCW 9A.36.031(1)(d) does not include the casino floor within the meaning of instrument or thing because, under the circumstances of this case, it was not likely to produce harm and it was not used as a weapon.
¶ 18 Courts in other jurisdictions have examined whether fixed or stationary objects are weapons or dangerous instruments for purposes of elevated violent offense charges. See David J. Marchitelli, Annotation, Stationary Object or Attached Fixture as Deadly or Dangerous Weapon for Purposes of Statute Aggravating Offenses Such as Assault, Robbery, or Homicide, 8 A.L.R.5th 775 (1992 & 1998 Supp.). Our holding agrees with decisions by other courts that have found a stationary object could not be the basis for an aggravated charge because the object was not within the scope of the statutory language in question.[3]
*181 ¶ 19 In contrast, courts that have found a stationary object could be a weapon or instrumentality under an aggravated charge employed a use-oriented approach. The New York Court of Appeals held there was sufficient evidence demonstrating a sidewalk was a dangerous instrument where the defendant held the victim's head and repeatedly struck it against the pavement. People v. Galvin, 65 N.Y.2d 761, 481 N.E.2d 565, 492 N.Y.S.2d 25 (1985). The Galvin court applied a definition of "dangerous instrument" that included "any instrument, article or substance. . . which, under the circumstances in which it is used . . . is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00.13 (McKinney). New York's approach explicitly relies on the defendant's use of an object, regardless of whether it is fixed or wieldable. People v. Carter, 53 N.Y.2d 113, 116, 423 N.E.2d 30, 440 N.Y.S.2d 607 (1981).
¶ 20 Similarly, the Oregon Court of Appeals found a concrete sidewalk within the statutory meaning of "dangerous weapon" for purposes of elevating an assault charge. State v. Reed, 101 Or.App. 277, 279, 790 P.2d 551 (1990). Applying the Oregon criminal statute's definition of a "dangerous weapon" (including "`any instrument, article or substance which under the circumstances in which it is used . . . is readily capable of causing death or serious physical injury'"), the court affirmed the defendant's conviction for assault with a deadly weapon where he repeatedly struck his girl friend's head against the sidewalk. Id. at 279-80, 790 P.2d 551 (quoting former Or.Rev.Stat. 161.015(1) (1991)). The court held "that `any instrument, article or substance,' no matter how harmless it may appear when used for its customary purposes, becomes a dangerous weapon when used in a manner that renders it capable of causing serious physical injury." Id. at 279, 790 P.2d 551; see also United States v. Murphy, 35 F.3d 143 (4th Cir.1994) (holding that stationary steel bars on a jail cell were dangerous weapons when the defendant slammed the victim's head against them).
¶ 21 Following the New York and Oregon decisions, a New Mexico court affirmed a conviction for aggravated battery with a "deadly weapon" where the defendant slammed the victim's head into a brick wall two or three times. State v. Montano, 126 N.M. 609, 610, 973 P.2d 861 (1998). The court held that the statutory definition, including "any other weapons with which dangerous wounds can be inflicted," was broad enough to include a brick wall and declined to adopt a distinction based on whether the defendant could wield the object. Id.
¶ 22 Two things distinguish the case before us from cases where courts found a stationary object a weapon or dangerous instrument for purposes of an elevated charge. First, each defendant in Galvin, Reed, and Montano took hold of the victim's head and repeatedly struck it against the ground. Viewing the evidence in the light most favorable to the prosecution, Marohl forced Peterson onto the floor, falling to the ground after him. He did not take hold of Peterson's head (or prosthetic arm) to strike it against the ground, but rather got to his feet and attempted to help Peterson.
¶ 23 Second, the New York criminal statute in Galvin and the Oregon criminal statute in Reed specifically referenced the use of an object when defining a dangerous weapon or instrument. RCW 9A.36.031(1)(d) makes no reference to the defendant's use of an "instrument or thing likely to produce bodily harm." And unlike the New Mexico statute's inclusion of a weapon "with which dangerous wounds can be inflicted," RCW 9A.36.031(1)(d) does not include any instrument or thing capable of inflicting harm, but *182 only those likely to produce harm. Accepting Marohl forced Peterson to the ground, there is no evidence his use of the ground transformed it into an object similar to a weapon.
¶ 24 The issue in this case is whether a floor is an instrument or thing likely to produce harm when the defendant causes the victim to impact the ground. The plain meaning of the statute is unambiguousunder these circumstances, the casino floor was not similar to a weapon, nor was it "likely to produce bodily harm." The casino floor was not within the scope of RCW 9A.36.031(1)(d).

Insufficient evidence exists to show Marohl assaulted Peterson with an "instrument or thing likely to produce bodily harm."
¶ 25 The prosecuting attorney argued the instrument or thing Marohl used to injure Peterson was "a combination of the arm lock, the choke lock, and taking him into the ground and slamming him into the floor." 4 RP (Feb. 1, 2008) at 449. A bare arm may not be the instrument or thing that elevates an assault charge.[4]See State v. Donofrio, 141 Wash. 132, 137-38, 250 P. 951 (1926) (holding a bare fist or hand is not a "weapon or other instrument or thing likely to produce bodily harm"). Because Marohl's arm and the casino floor must be excluded from the definition of "instrument or thing likely to produce bodily harm," insufficient evidence exists to show Marohl committed third degree assault under RCW 9A.36.031(1)(d).
¶ 26 We reverse.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Third degree assault is a class C felony. RCW 9A.36.031(2).
[2] The State did not claim Marohl injured Peterson with a weapon.
[3] In a case where the defendant repeatedly struck the victim's head on the pavement, the Florida Supreme Court held "weapon" did not mean pavement or other passive objects. State v. Houck, 652 So.2d 359, 360 (Fla.1995) (holding the meaning of "weapon," when undefined in the statute, must be the dictionary definition). The court found the legislature meant to deter conduct involving the use of instruments with a recognized purpose to inflict serious harm. Id; see also State v. Legendre, 362 So.2d 570, 571-72 (La. 1978) (holding the usual sense of the words "dangerous weapon" and the statutory definition including "any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm" did not include a concrete sidewalk where the defendant repeatedly struck the victim's head against the sidewalk); State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 55 (1946) (stating a victim's fall against a stationary object such as a wall would be irrelevant where the contact was a "mere incident of the criminal act" and the wall was not intended as an instrumentality).
[4] One month after the incident giving rise to this case, the legislature amended the second degree assault statute to include assault by strangulation. RCW 9A.36.021(1)(g); Laws of 2007, ch. 79, § 2.