# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51815-5-II |
| Respondent, | |
| v. | |
| STEPHEN NEIL TIMMONS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Stephen Timmons used a garden hose to flood the upstairs bedroom of his ex-girlfriend's house. The police responded to the incident, and a piece of drywall fell off the ceiling. It struck a police officer in the head, giving him a concussion. A jury convicted Stephen Timmons of assault in the third degree, along with various other crimes.[1]

Timmons argues that insufficient evidence supports his conviction because the object that hit the police officer was not "a weapon or other instrument or thing likely to produce bodily harm" within the assault in the third degree statute, RCW 9A.36.031(1)(d). Timmons also contends that the trial court imposed unauthorized legal financial obligations (LFOs).

We agree with Timmons, reverse his conviction for assault in the third degree, and remand for resentencing.

---

[1] Because Timmons does not challenge his other convictions on appeal, many of the facts underlying those matters are not discussed further.

FACTS

Timmons and Rebecca Andrews had a dating relationship and lived together for approximately 30 years. However, Timmons began using drugs, and Andrews obtained a no-contact order that excluded him from the house that they shared.

One day, Timmons put a garden hose in the upstairs window of the house and turned it on. He then called Andrews and told her that she had "better go rescue [her] cats because [he had] just ruined the house." 2 Report of Proceedings (RP) at 165.

The police escorted Andrews to the house. They saw the garden hose in the second floor window. Because water ran through the ceiling, drywall had fallen from the ceiling on the first floor.

Officer Daniel McPherson entered the house on the first floor, and a piece of drywall fell from the ceiling and hit him on the head. He suffered a concussion.

The police later arrested Timmons, and the State charged him with various crimes, including assault in the third degree based on the drywall hitting McPherson.

At the conclusion of the State's evidence at trial, Timmons moved to dismiss the assault charge. The State opposed the motion and argued that the evidence showed that Timmons acted with criminal negligence and caused McPherson's injury by an instrument or thing likely to produce bodily harm. The State clarified that the relevant instrument or thing was not the drywall that fell and hit McPherson but rather the "flooded second story" of Andrews's home. 4 RP at 440. The court denied Timmons's motion.

During the State's closing argument, it argued how the relevant instrument or thing was not the drywall itself, but the flooded house "where the structural integrity has been deteriorated. It is a house that is likely to fall down." 5 RP at 629.

The jury convicted Timmons of nine crimes, including assault in the third degree. The court sentenced Timmons to 96 months of confinement. It imposed a criminal filing fee, jury demand fee, domestic violence fee, and deoxyribonucleic acid (DNA) database fee. The court also found Timmons indigent. Timmons appeals.

## ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Timmons argues that insufficient evidence supports his assault in the third degree conviction because the object that hit McPherson was not a weapon or other instrument or thing likely to produce bodily harm. Timmons contends that regardless of whether we characterize the injury-causing object as a piece of drywall or the flooded second story of a home, neither falls within the statute.

The State argues that under the circumstances presented here, "a piece of drywall or ceiling in a purposefully flooded home becomes 'an object likely to produce harm . . . [and] fall[s] within the . . . purview' of the third degree assault statute." Br. of Resp't at 2 (second alteration in original) (quoting *State v. Marohl*, 170 Wn.2d 691, 699, 246 P.3d 177 (2010)).

Although the State is no longer arguing, as it did at trial, that the relevant object is the house itself, we conclude that, under the circumstances presented here, neither the house, drywall, nor water was a weapon or other instrument or thing likely to produce bodily harm as those terms are used in the assault in the third degree statute.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the

truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

By convicting Timmons of assault in the third degree, the jury found that "[w]ith criminal negligence, [he] cause[d] bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

In *Marohl*, the defendant placed a man in a chokehold and both fell to the floor of a casino. 170 Wn.2d at 695-96. The impact of the floor caused the man to suffer bruises and scrapes, broke his prosthetic arm, and possibly rendered him unconscious. *Marohl*, 170 Wn.2d at 696. A jury convicted the defendant of assault in the third degree. *Marohl*, 170 Wn.2d at 697.

In reversing the conviction, the court agreed with the defendant that insufficient evidence supported the conviction because "the floor was not an 'instrument or thing likely to produce bodily harm.'" *Marohl*, 170 Wn.2d at 697 (quoting RCW 9A.36.031(1)(d)).

The court first concluded that the casino floor was a "thing" and also possibly an "instrument." *Marohl*, 170 Wn.2d at 699. The court then focused its inquiry on whether the floor was a thing "'likely to produce bodily harm.'" *Marohl*, 170 Wn.2d at 699 (quoting RCW 9A.36.031(1)(d)).

The court recognized that the statute's language contained a specific word followed by general words. *Marohl*, 170 Wn.2d at 699. Thus, it utilized the canon of statutory construction whereby "'the general words are construed to embrace a similar subject matter' as the specific words." *Marohl*, 170 Wn.2d at 699-700 (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 149, 164 P.3d 475 (2007)). Therefore, the court reasoned:

> [A]n "instrument or thing likely to produce bodily harm" . . . must be similar to a weapon. The assault statute does not define "weapon," but the dictionary definition is "an instrument of offensive or defensive combat: something to fight with." Where the defendant causes the victim to impact the floor and makes no effort to

> proactively use the floor to injure the victim, the defendant has not used the floor like a weapon because he has not used it as an "instrument of . . . combat" or "something to fight with."

*Marohl*, 170 Wn.2d at 700 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2589 (2002)). The court concluded that, under the circumstances presented, "the casino floor was not similar to a weapon." *Marohl*, 170 Wn.2d at 703.

Additionally, the court recognized that unlike some other states' statutes, RCW 9A.36.031(1)(d) did "not include any instrument or thing *capable* of inflicting harm, but only those *likely* to produce harm." *Marohl*, 170 Wn.2d at 702. As a result, the court concluded that "[t]he casino floor was not within the scope of RCW 9A.36.031(1)(d)." *Marohl*, 170 Wn.2d at 703.

In *State v. Shepard*, 167 Wn. App. 887, 888-89, 275 P.3d 364 (2012), the defendant violently threw his former girlfriend into various pieces of furniture. A jury convicted the defendant of assault in the third degree, and he appealed. *Shepard*, 167 Wn. App. at 889.

The majority relied on *Marohl* to conclude that the furniture was not a weapon or other instrument or thing likely to produce bodily harm because the defendant "brutally pushed or threw [the victim]. He did not pick up the [furniture] or any other object or instrumentality and strike [the victim] with it or deliberately beat her against it." *Shepard*, 167 Wn. App. at 890.

The dissent argued that the majority misread *Marohl*. According to the dissent, under *Marohl*, an object can fall within the statute if "the object itself [is] in the nature of a weapon, or . . . [is] used as a weapon." *Shepard*, 167 Wn. App. at 892 (Korsmo, C.J., dissenting). Therefore, the dissent argued that the evidence was sufficient to support the conviction because under the facts presented, a reasonable jury could find that the defendant used the furniture as "instrumentalities to injure" the victim. *Shepard*, 167 Wn. App. at 892.

Here, we conclude that, under the circumstances presented, neither the house, the drywall, nor the water falls within the statute's purview. Under *Marohl*, "an 'instrument or thing likely to produce bodily harm' . . . must be similar to a weapon." 170 Wn.2d at 700. Thus, it must be sufficiently analogous to "'an instrument of offensive or defensive combat: something to fight with.'" *Marohl*, 170 Wn.2d at 700 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2589).

In *Marohl*, the court suggested that a casino floor could fall within the statute if it was used to smash someone's head. And in *Shepard*, the dissent argued that furniture used to increase the damage caused by throwing someone fell within the statute. In both of those situations, the use of the instruments sufficiently related to combat. Here, however, there are no instruments or things that were used in a manner sufficiently related to combat.

We also point out that, while a flooded house, soaked drywall, or water in the second story of a house could possibly cause bodily harm, they are not likely to produce bodily harm. *Marohl*, 170 Wn.2d at 702. Because they are not likely to produce bodily harm, we conclude that they do not fall within the assault in the third degree statute. Therefore, insufficient evidence exists to support Timmons's conviction for assault in the third degree.

## II.     LFOs

Timmons argues, and the State agrees, that because of the 2018 amendments to the LFO statutes, the criminal filing fee, jury demand fee, domestic violence fee, and DNA database fee should be stricken.

When the court resentences Timmons, it should reconsider the imposition of LFOs in light of the 2018 amendments to the LFO provisions, Laws of 2018, ch. 269, and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

6

We reverse Timmons's conviction for assault in the third degree and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Sutton, J.