IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37989-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH JAY MOORE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Kenneth Jay Moore killed his mother and assaulted an investigating officer. He was convicted of first degree murder and second degree assault. We affirm Mr. Moore's convictions, but reverse his sentence and remand for resentencing.

FACTS

Leisa Holt was Kenneth Moore's mother. She began dating Jeff Hesterley in 2016. Ms. Holt and Mr. Hesterley celebrated Valentine's Day 2017 by spending the night of February 13 at a hotel. After enjoying lunch together on February 14, the couple amicably parted ways. That was their last contact.

On February 17, Mr. Hesterley grew worried. He had not heard from Ms. Holt, despite several calls and text messages. Ms. Holt also had not shown up at work. Mr. Hesterley went to Ms. Holt's home to investigate. Receiving no answer to his knocks at the door, Mr. Hesterley let himself inside using a key given to him by Ms. Holt.

Upon entering the home, Mr. Hesterley was confronted by Kenneth Moore. Although Mr. Moore lived with his mother, Mr. Hesterley had yet to meet Mr. Moore. It was Mr. Hesterly's understanding that Mr. Moore had some level of disability and relied on his mother for care. Mr. Hesterly observed Mr. Moore was covered in scratches. Mr. Moore ordered Mr. Hesterley out of the house and slammed the door in his face. Mr. Hesterley called the police to request a welfare check.

Multiple officers responded to the scene. They entered the home and saw Kenneth Moore standing against a hallway wall. Mr. Moore appeared to be trying to hide himself, preparing for an ambush. Mr. Moore was holding a metallic object that appeared to be a rifle. One of the officers observed the barrel of the rifle pointed at his head.[1] The officers left the home in order to avoid a confrontation.

The officers summoned a SWAT (special weapons and tactics) team for assistance. The team successfully ordered Mr. Moore out of the home, thereby giving officers an

---

[1] This interaction formed the basis of Mr. Moore's second degree assault charge.

2

opportunity to go inside for a search. In the home's kitchen, officers discovered trash bags containing severed human legs. A search of the bathroom revealed Leisa Holt's partially dismembered body, which was lying in a shower with a carving board underneath and various cutting instruments nearby.

In Mr. Moore's bedroom, officers found a disassembled rifle. The rifle was in three pieces—the wood stock, the barrel, and the magazine tube. After seizing the rifle pieces, a detective determined the rifle was missing screws necessary to perform a firearm function check. Police later found various screws in Mr. Moore's bedroom.

The three rifle pieces were sent to the Washington State Patrol Crime Laboratory for an operability analysis. Without the missing screws, it was impossible to reattach the stock of the firearm to the receiver and barrel. A firearms analyst reassembled the rifle using screws from a different rifle of the same model, and subsequently fired the rifle three times. According to the analyst, the rifle could also be fired without the stock attached. In addition, the screws recovered from Mr. Moore's bedroom were determined to fit the rifle.

## PROCEDURE

The State charged Kenneth Moore with one count of first degree murder and one count of second degree assault with a deadly weapon. The murder charge included

3

a sentencing aggravator for egregious lack of remorse. The assault charge included an aggravator for assault on a law enforcement officer. Mr. Moore received court-appointed counsel and was referred for a competency evaluation at Western State Hospital.

Prior to his competency evaluation, Mr. Moore began presenting communication difficulties. At one point, Mr. Moore indicated he had lost his hearing due to an assault at the jail. The trial court initially tried accommodating Mr. Moore by providing headphones. When that did not work, the court ordered Mr. Moore be provided real-time transcripts of his court hearings. Mr. Moore communicated with his attorney through the use of written notes.

Western State Hospital completed Mr. Moore's competency evaluation in November 2017. The evaluation did not uncover any mental disease or defect. The evaluation report also noted Mr. Moore appeared capable of speaking and hearing. Mr. Moore's case was then scheduled for a competency determination.

Mr. Moore's defense counsel disagreed with the competency evaluation's findings. Counsel complained Mr. Moore was unable to communicate, thereby hindering counsel's ability to prepare a defense. At one point in during the subsequent competency proceedings, Mr. Moore wrote a note to the court, asking for a new attorney. Counsel joined this request, claiming he could not effectively represent an incompetent person.

In April 2018, the court decided Mr. Moore was competent and declined to appoint a new

attorney. The court explained counsel was duty-bound to represent his client, regardless

of any disagreement with the court's competency decision. The court offered to appoint a

second chair attorney, who could help ensure Mr. Moore was able to review information

provided by the transcriptionist. Mr. Moore did not act on this offer.

Approximately five months after the competency determination, Mr. Moore's

attorney filed a written motion to withdraw. The motion was accompanied by a

declaration of counsel. In the declaration, counsel explained Mr. Moore remained largely

uncommunicative. Mr. Moore often refused to meet with defense counsel, although there

had been a productive meeting about two weeks prior to the filing of the motion.

According to defense counsel, Mr. Moore's claimed deafness negatively impacted

counsel's ability to provide effective representation. Defense counsel continued to opine

that Mr. Moore was not competent to assist in his defense and stand trial.

The court held a hearing on defense counsel's motion. During the hearing, Mr.

Moore passed a note to the court reading, "New lawyer please." 1 Report of Proceeding

(RP) (Sep. 7, 2018) at 92. Appointed counsel explained he had limited ability to help

Mr. Moore because of Mr. Moore's communication problems. The State pointed out that

the problems presented by Mr. Moore were not specific to existing counsel; thus,

replacing defense counsel would not solve the problems raised by Mr. Moore's

communication difficulties. The court did not remove Mr. Moore's existing attorney, but

now appointed a second chair attorney to provide assistance.

An omnibus hearing was held a few weeks later. At the hearing, defense counsel

told the court Mr. Moore had not been in communication with anyone about the case,

including an appointed investigator, psychologist, and mitigation expert. Defense counsel

continued to assert Mr. Moore was not competent. Counsel asked for a continuance,

which was granted. Mr. Moore objected to the continuance via a written note. He again

asked for a new attorney. The court denied this request. The case was ultimately set for

trial commencing June 3, 2019.

Four days before the start of trial, the parties appeared for a readiness hearing.

Mr. Moore wrote a note to the court again asking for a new attorney. The court engaged

Mr. Moore in a colloquy. Mr. Moore indicated he wanted a new lawyer for a "bunch of

reasons," including his belief that his attorney was engaged in "lies." 2 RP (May 30,

2019) at 320-21. The trial court declined to appoint new counsel.

At the outset of trial on June 3, defense counsel renewed his motion to withdraw.

The court denied the motion. During the court's opening statements to the jury venire,

Mr. Moore held up a handwritten sign for the potential jurors which read, in all capital

letters, "I asked to represent myself." 2 RP (Jun. 3, 2019) at 337-38. After excusing the jury, the court denied the request to change attorneys or to allow Mr. Moore to represent himself. Defense counsel then moved for a mistrial, which the court also denied.

Trial was peppered with conflicts between Mr. Moore and his attorney. A jury ultimately convicted Mr. Moore as charged, including the egregious lack of remorse sentencing aggravator.

Mr. Moore's first degree murder conviction carried a standard range sentence of 261 to 347 months. The range for second degree assault was 12 to 14 months, plus a 36-month firearm enhancement. The court imposed an exceptional sentence totaling 410 months in prison. In addition to an egregious lack of remorse, the court found the first degree murder charge involved an aggravating circumstance of exceptional cruelty. The court relied on both factors to impose the exceptional sentence on the murder charge.[2]

Mr. Moore appeals his judgment and sentence. A Division Three panel considered Mr. Moore's appeal without oral argument after receiving an administrative transfer of this case from Division Two.

---

[2] The range for the assault charge was enhanced based on the jury's finding a sentence aggravator for assault on a law enforcement officer. This aggravator is not at issue on appeal.

ANALYSIS

*Sufficiency of the evidence—firearm*

Mr. Moore challenges the sufficiency of the State's evidence in support of his second degree assault conviction. Specifically, Mr. Moore claims the evidence was insufficient to support a finding that his offense involved a deadly weapon. He argues the device at issue was nothing more than an inoperable rifle barrel. According to Mr. Moore, this does not meet the definition of a deadly weapon.

We review Mr. Moore's sufficiency challenge de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). The question is whether, construing the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the crime charged beyond a reasonable doubt. *State v. Marohl*, 170 Wn.2d 691, 698, 246 P.3d 177 (2010).

As charged in this case, the crime of second degree assault requires proof of a deadly weapon. RCW 9A.36.021(1)(c). A firearm constitutes a deadly weapon. RCW 9A.04.110(6). A firearm is defined as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." Former RCW 9.41.010(9) (2013). Our case law requires a firearm to "be capable of being fired." *State v. Tasker*, 193 Wn. App. 575, 594, 373 P.3d 310 (2016). "Evidence that a device appears

8

to be a real gun and is being wielded in committing a crime is sufficient circumstantial evidence that it is a firearm." *Id.*[3]

The evidence here was sufficient to prove Mr. Moore committed assault while armed with an operable firearm. The officers who encountered Mr. Moore all testified they saw Mr. Moore holding a rifle or the barrel of a rifle. No one claimed Mr. Moore possessed only the barrel of a rifle. The manner in which Mr. Moore held the device indicated he was on the attack with a real, operable weapon. Although law enforcement subsequently found a disassembled rifle, this does not mean the rifle was disassembled at the time of the assault. At least one hour passed between the assault and Mr. Moore's forced exit from the home. This afforded plenty of time for dismemberment. In addition, the uncontested trial testimony was that the pieces of the rifle were capable of discharging ammunition even in a partially disassembled state. The jury could easily infer that the

---

[3] Our case law holds that a device can meet the definition of a firearm so long as it is "capable of being fired, either instantly or with reasonable effort and within a reasonable time." *Id.* Mr. Moore claims this definition only applies to firearm possession offenses. When it comes to actively using a firearm to perpetrate second degree assault, Mr. Moore argues the firearm must be operable immediately, at the time of the offense. We need not decide whether Mr. Moore is correct about the proper scope of the firearm definition. As explained in the body of this opinion, the evidence in this case meets Mr. Moore's proffered definition of a firearm.

device possessed by Mr. Moore at the time of his initial contact with law enforcement met

the definition of a functioning firearm.

*Request for real-time transcriptionist for jail meetings*

Mr. Moore contends the trial court impaired his right to communicate with his

attorney by refusing a real-time transcriptionist to help defense counsel communicate with

him during jail meetings. We disagree. Although defense counsel and Mr. Moore had

communication problems, Mr. Moore fails to explain how a transcriptionist would have

improved things. Unlike a court hearing with multiple participants, a jail meeting is a one-

on-one encounter. It is not apparent why a transcriptionist would be more effective in

facilitating one-on-one communication than the parties' use of a laptop, tablet, or

notepad. If Mr. Moore has evidence showing that a transcriptionist could have made a

difference, he can bring this factual information to the court's attention through a

personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251

(1995). His claim is not amenable to review on direct appeal.

*Denial of motion to withdraw as counsel*

Mr. Moore argues the trial court violated his rights under the Sixth Amendment

to the United States Constitution by denying various requests for withdrawal or

substitution of counsel. We review the trial court's assessment of these requests for abuse

of discretion. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991); *State v. Hegge*, 53 Wn. App. 345, 350-51, 766 P.2d 1127 (1989).

The Sixth Amendment confers the right to appointed counsel. But there is no right to choose a specific attorney as appointed counsel. Nor is a defendant empowered to receive a change in appointed counsel by refusing to cooperate. *State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). Nevertheless, effective assistance of counsel requires a defendant be provided a fair opportunity for a meaningful attorney-client relationship. "[A] complete breakdown of communication which may lead to an unjust verdict is considered a good and sufficient reason for withdrawal" or substitution of counsel. *Hegge*, 53 Wn. App. at 351.

Appellate courts look at three issues in determining whether a trial court abused its discretion in refusing a request for substitute counsel: "(1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion." *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 723-24, 16 P.3d 1 (2001).

Here, our review is largely driven by the first factor. The primary issue raised by the requests for withdrawal or substitution was defense counsel's disagreement with the trial court's competency determination. Counsel repeatedly told the court that he wanted to withdraw because he could not ethically represent an incompetent person. The trial

11

court correctly recognized this was not an appropriate reason for terminating representation. The remedy for an erroneous competency determination is appellate review. It does not provide a basis for withdrawing from representation.

Mr. Moore's independent requests for new counsel did not provide the court with additional reasons for appointing a new attorney. The record indicates Mr. Moore's communication problems were not specific to his attorney. He refused to meet with various professionals appointed to help him at trial, including a psychologist, an investigator, and a mitigation expert. He also rebuffed communication efforts made by his second chair attorney. The record fails to show there was a conflict between Mr. Moore and his attorney that could have been resolved by the appointment of new counsel.

With respect to the second factor, the trial court afforded Mr. Moore and his attorney numerous opportunities to explain the need for new counsel. At each instance, appointed counsel emphasized his disagreement with the court's competency decision. The court was never supplied information suggesting that a change of counsel could have made a difference in attorney-client communications. We therefore defer to the trial court's assessment.

With respect to timeliness, Mr. Moore's most adamant requests for new counsel were not made until the eve of trial. This was not timely. We defer to the trial court's

assessment that Mr. Moore's belated requests for a new attorney did not warrant court action.

*Sentence aggravators*

Mr. Moore challenges the two aggravators used to enhance his sentence on the first degree murder conviction. He claims there was insufficient evidence to support an aggravator for egregious lack of remorse. He also points out the aggravator for deliberate cruelty was procedurally flawed. The State concedes both errors. We accept these concessions.

Because a sentence aggravator enhances a defendant's sentence beyond the statutory standard range, it must be supported by pretrial notice and then proven to a jury beyond a reasonable doubt. RCW 9.94A.537(1), (3)-(4). The facts necessary for a sentence aggravator must be supported by sufficient evidence. The sufficiency analysis asks "whether any rational trier of fact could have found the presence of the aggravating circumstances beyond a reasonable doubt." *State v. Zigan*, 166 Wn. App. 597, 601-02, 270 P.3d 625 (2012).

Here, the State did not present evidence supporting the aggravator of egregious lack of remorse. Although the facts of the case are both sad and gruesome, this goes only to the heinousness of the crime, not Mr. Moore's mindset after the offense. Mr. Moore's

general denial of guilt is not sufficient to establish lack of remorse. Because there was

no evidence of lack of remorse after commission of the crime, Mr. Moore is entitled to

resentencing.

While Mr. Moore's case certainly seemed to involve deliberate cruelty, this

sentence aggravator was never the subject of pretrial notice, nor was it specifically proven

to the jury at trial. As a result of these procedural flaws, imposition of an exceptional

sentence based on deliberate cruelty was unwarranted. Resentencing is required. *State v.*

*Van Buren*, 136 Wn. App. 577, 580, 150 P.3d 597 (2007).

*Assistance of counsel*

Mr. Moore contends his right to effective assistance of counsel was violated by his

attorneys' failure to investigate mitigating circumstances regarding sentencing. The

current record fails to substantiate this claim. Regardless, Mr. Moore's claim is mooted

by our order granting resentencing.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In a statement of additional grounds for review, Mr. Moore asks to be stripped

of his United States citizenship and sent into exile in Mexico with a backpack full of

survival equipment. To the extent we have power to do so, we deny this request.

14

CONCLUSION

Mr. Moore's conviction is affirmed. The sentence is reversed and this matter is remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.