**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56249-9-II |
| Respondent, | |
| v. | |
| TREVOR SCOTT ALTMAN, | ORDER GRANTING<br>MOTION TO PUBLISH |
| Appellant. | |

Non-party, Washington Defender Association (WDA), filed a motion to publish this court's unpublished opinion filed on August 23, 2022. The parties responded to the motion. After consideration, it is hereby

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the WDA's motion to publish is granted.

FOR THE COURT: Jj. Worswick, Lee, Glasgow

_____
LEE, JUDGE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56249-9-II |
| Respondent, | |
| v. | |
| TREVOR SCOTT ALTMAN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Trevor S. Altman appeals his conviction for third degree assault. Altman argues that the evidence was insufficient to support his conviction because the State failed to prove that he used a weapon or instrument or thing likely to produce bodily harm under RCW 9A.36.031(1)(d). We hold that the evidence presented was insufficient to support Altman's third degree assault conviction. Therefore, we reverse and vacate Altman's third degree assault conviction and remand for the trial court to dismiss the third degree assault charge with prejudice.

FACTS

A.W.[1] alleged that she was sexually assaulted by Altman on December 13, 2018. The State charged Altman with second degree assault with sexual motivation, alleging he intentionally assaulted A.W. by strangulation or suffocation. Alternatively, the State charged Altman with third degree assault with sexual motivation for causing bodily harm to A.W. by means of a weapon or

_____

[1] This prehearing uses A.W.'s initials to protect her privacy as a sexual assault victim.

No. 56249-9-II

other instrument or thing likely to produce bodily harm. The State also charged Altman with second degree rape and unlawful imprisonment with sexual motivation.

At a jury trial, A.W. testified that she met Altman through various networking groups for business owners in Thurston County. They began communicating with one another in December 2018, and their conversations ranged from business to personal matters. On December 13, 2018, Altman invited A.W. to come to his home to hang out and watch television. A.W. accepted the invitation and went to Altman's home on the same day in the early afternoon.

When A.W. arrived at Altman's home, they sat on his couch and began watching television and drinking beer. Altman suddenly got on top of A.W. and straddled her. Altman grabbed the back of A.W.'s hair with one hand, used his other hand to grab her throat, and forcefully began to kiss her. Altman was "squeezing" A.W.'s throat, and A.W. stated that "it was painful off the git-go." Verbatim Report of Proceedings (VRP) (July 7, 2021) at 124-25. A.W. was "shocked and scared." VRP (July 7, 2021) at 125. Altman then pulled A.W. off the couch, dragged her across the room, and dropped her onto her knees, all while holding onto her throat and hair. Altman then forced A.W. to perform oral sex and would slap her if she closed her eyes or didn't look at him. After, Altman picked A.W. up with his hand on her neck and hair and dragged her across the room back to the couch where Altman began having sex with her. A.W. stated that she "couldn't really say much . . . because he was . . . squeezing [her] throat very hard." VRP (July 7, 2021) at 133. She further testified that Altman grabbed her by the neck and hair once again to pull her to the front of the living room where he again forced her to perform oral sex.

2

No. 56249-9-II

A.W. noticed a bruise forming in the area on her neck and collarbone where Altman's hands were and that her neck and throat were sore because it had a lot of trauma. A.W. went to the hospital for a physical sexual assault examination where the nurse noticed redness and hemorrhages in the back of A.W.'s throat.

Altman also testified at trial. Altman admitted that he engaged in sexual activity with A.W., but he claimed that he did not cause A.W. any physical harm or pain and that the encounter was consensual. Altman stated that he never choked A.W. nor had his hands around her throat. He did not grab the back of A.W.'s head or pull it, and he never covered her mouth and nose with his hand at all. Altman believed that the encounter with A.W. was consensual because A.W. did not "claw," "fight back," or "say no" during any kind of sexual contact or activity. VRP (July 13, 2021) at 566-67. Altman testified that he is a part of the BDSM[2] community, which values consent, and that he informed A.W. of his involvement.

The trial court instructed the jury on the crime of second degree assault and also instructed the jury that if it had a reasonable doubt as to any one of the elements of second degree assault, the jury was to consider the lesser alternative charge of third degree assault. The trial court's third degree assault instruction included the following language:

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about December 13, 2018, the defendant caused bodily harm to [A.W.];

---

[2] "BDSM" as an acronym can stand for "*b*ondage and *d*iscipline + sadism and masochism (or sado-*m*asochism) with *DS* later interpreted as *d*ominance (or *d*omination) and submission." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/BDSM. (last visited Aug. 12, 2022).

3

No. 56249-9-II

> (2) That the physical injury was caused by a weapon or other instrument or thing likely to produce bodily harm;
> (3) That the defendant acted with criminal negligence; and
> (4) That this act occurred in the State of Washington.

Clerk's Papers at 297.

During closing arguments, the State argued that Altman's hands were a "thing" used to support a lesser alternative charge of third degree assault:

> I submit to you the State is not saying that there was a weapon used in this case. I submit to you that we're not saying there was an instrument that was used in this case. However, it also says it can be from a thing likely to produce bodily harm. And I submit to you, ladies and gentlemen, a thing can be anything.

VRP (July 14, 2021) at 690.

The jury found Altman not guilty of second degree rape, second degree assault by strangulation with sexual motivation, and unlawful imprisonment with sexual motivation. However, the jury found Altman guilty of a lesser alternative charge of third degree assault. The jury also returned a special verdict that the charge of third degree assault was sexually motivated. The trial court imposed a standard range sentence of 15 months of total confinement and 36 months of community custody.

Altman appeals.

## ANALYSIS

Altman argues that his conviction for third degree assault must be reversed because the evidence was insufficient to show that Altman assaulted A.W. with an "instrument or thing." Br. of Appellant 9. We agree.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56249-9-II

We review challenges to the sufficiency of the evidence by considering whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that can be drawn from the evidence. *Id.* Circumstantial evidence and direct evidence are considered equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014).

Under RCW 9A.36.031(1)(d), a person is guilty of third degree assault if he or she, "with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." The issue here is whether a hand meets the statutory requirement of "other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

The statute does not define the term "other instrument or thing likely to produce bodily harm." Therefore, the statute is given its plain and ordinary meaning as defined in the dictionary. *State v. Marohl*, 170 Wn.2d 691, 699, 246 P.3d 177 (2010). In *Marohl*, the court applied the dictionary definition to "instrument" and "thing," describing both as:

> [A]n "instrument" is "a means whereby something is achieved, performed, or furthered." Webster's Third New International Dictionary 1172 (2002). More narrowly, an "instrument" is a "utensil" or "implement." *Id.* A "thing" is "an entity that can be apprehended or known as having existence in space or time," "an inanimate object," or "whatever may be possessed or owned or be the object of a right—distinguished from *person*." *Id.* at 2376.

5

No. 56249-9-II

*Id.* (some alterations in original). The court also applied the dictionary definition to the term "likely" to mean "'of such a nature or so circumstanced as to make something probable.'" *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1310). The court went on to hold that "[o]nly assaults perpetrated with an object likely to produce harm by its nature or by circumstances fall within [RCW 9A.36.031(1)(d)]'s purview." *Id.*

*Marohl* went on to cite to another canon of statutory construction, ejusdem generis, to conclude that an "instrument or thing likely to produce bodily harm" must be similar to a weapon. *Id.* at 699-700. In turning to the dictionary definition of "weapon," the court held that an instrument or thing must be used like a weapon, "as an 'instrument of . . . combat' or 'something to fight with.'" *Id.* at 700 (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2589).

The issue in *Marohl* was whether a floor is an instrument or thing under the third degree assault statute when the facts showed the defendant, a mixed martial arts fighter, held the victim in a chokehold and the victim was injured when he fell onto the floor after he lost consciousness. *Id.* at 695-96. The court held that because the defendant made no effort to proactively use the floor to injure the victim, the defendant did not use the floor like a weapon. *Id.* at 700. In response to the State's argument that the chokehold contributed to the defendant taking the victim "'into the ground and slamming him into the floor,'" the court stated that "[a] bare arm may not be the

6

No. 56249-9-II

instrument or thing that elevates an assault charge." *Id*. at 703 (citing *State v. Donofrio*, 141 Wash. 132, 137-38, 250 P. 951 (1926)).[3,4]

Here, in light of *Marohl*'s definition of "instrument or thing likely to produce bodily harm," hands do not qualify. The State relied solely on Altman's hands to support the lesser alternative charge of third degree assault. Hands are not a "utensil" or "implement." Nor are hands "an inanimate object." Instead, hands are an extension of a person. *See id*. at 699. Because there is no other evidence that Altman used anything other than his hands when grabbing and squeezing A.W.'s neck, the State failed to present sufficient evidence to support the essential element of "a weapon or other instrument or thing likely to produce bodily harm" for third degree assault.[5] RCW 9A.36.031(1)(d). Therefore, there is insufficient evidence to support Altman's conviction for third degree assault.

We reverse and vacate Altman's conviction for third degree assault and remand for the trial court to dismiss the third degree assault charge with prejudice.

---

[3] The *Marohl* court noted that the legislature amended the second degree statute to include assault by strangulation one month after the incident on review. 170 Wn.2d at 703 n.4.

[4] In *State v. Donofrio*, the defendant was charged with assault with a weapon or other instrument or thing likely to produce bodily harm, but the victim could not identify what she was struck with. 141 Wash. at 136-37. The court opined that the trial court should have given a lesser included assault instruction to the jury because the jury might believe the victim was hit by a bare fist or hand, implying that a bare fist or hand is not an instrument or thing likely to produce bodily harm. *Id*. at 137-38.

[5] We note that there may be a circumstance where hands may be considered a weapon with appropriate training or depending on its intended use and circumstances. However, we are constrained to follow our Supreme Court precedent. *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984).

No. 56249-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Glasgow, C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.