[Nos. 37621-1-II; 38022-6-II. Division Two. November 17, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER ISRAEL SAUNDERS, *Appellant*.

*In the Matter of the Personal Restraint of* CHRISTOPHER ISRAEL SAUNDERS, *Petitioner*.

*Christopher I. Saunders*, pro se.

*David L. Donnan* (of *Washington Appellate Project*) and *Vanessa M. Lee*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor* and *Thomas C. Roberts, Deputies*, for respondent.

¶1 VAN DEREN, C.J. — Christopher Saunders appeals his conviction for failure to register as a sex offender, arguing in his statement of additional grounds for review (SAG)[1] that the trial court violated his speedy trial rights and that other facts require reversal.[2] Because the trial court violated Saunders's speedy trial rights, we reverse the trial court and remand for entry of an order dismissing the charges against Saunders under CrR 3.3(h).

## FACTS

¶2 Saunders is a sex offender required to register with the Pierce County Sheriff. He failed to update his registra-

---

[1] RAP 10.10.

[2] In his direct appeal, Saunders argues that he did not receive effective assistance of counsel because his trial attorney failed to call one witness, failed to subpoena another witness, and did not request a missing witness instruction when unable to subpoena the witness. He also contends that his sentence exceeds the statutory maximum, is indeterminate, and violates the separation of powers doctrine. In his personal restraint petition Saunders again argues that the trial court denied his speedy trial rights. We do not address these issues because we resolve this appeal on the speedy trial issue raised in his SAG.

tion as a transient sex offender. On August 7, 2007, the State charged Saunders with failure to register as a sex offender.

¶3 It appears that the State took Saunders into custody on September 17, 2007.[3] Saunders's trial was initially set for November 6 but his attorney moved for a continuance on October 31, over Saunders's objection and despite his refusal to sign the continuance,[4] to December 5 for "more time to prepare for trial" under CrR 3.3(f)(2). Clerk's Papers (CP) at 61. On November 27, Saunders's trial was again continued to January 8, 2008, after his attorney moved for a continuance for "ongoing invest[igation]/negotiations, defense attorney in trial" under CrR 3.3(f)(2) and Saunders again refused to sign the continuance. CP at 62.

¶4 On January 8, the State and Saunders's attorney moved for a continuance until February 20 for "further negotiations." Report of Proceedings (RP) (Jan. 8, 2008) at 3. Saunders refused to sign the continuance and he disagreed with his attorney's request, stating, "She's asking for another month for negotiations. I don't agree with that . . . . If the prosecutor isn't willing to negotiate, I'm ready to go to trial." RP (Jan. 8, 2008) at 4. The order granting the continuance on January 8 states that it was an agreed request for "Further Negotiations" but did not specify whether it was pursuant to CrR 3.3(f)(1), CrR 3.3(f)(2), or "for administrative necessity." CP at 63.

¶5 Saunders, without his counsel's participation, unsuccessfully moved to dismiss the action on February 13 based on CrR 3.3, CrR 8.3(b), and the "speedy trial [c]lauses of the State and Federal Constitutions." CP at 3. On February 20, following argument on Saunders's initial motion to dismiss, the trial court asked the State and defense counsel:

---

[3] The only mention in the record of the start of Saunders's jail time is his handwritten motion to dismiss. This date is consistent with Saunders's 193 day credit for time served.

[4] The signature line reads, "Refused-Present in court-over objection." Clerk's Papers at 61. At the hearing on his motion to dismiss he stated, "I objected to every single [continuance]." Report of Proceedings (Feb. 20, 2008) at 10.

THE COURT: [Prosecutor], anything for the State? Who's the prosecutor on this?

[PROSECUTOR]: I'm looking it up, Your Honor. Right now [assigned prosecutor] is the prosecutor on record. It's still in our negotiating unit, Your Honor. I don't know anything about [the assigned prosecutor's] availability for trial, but I know that he signed that form intending that this be continued.

THE COURT: Well, [defense attorney], you're here, I guess, instead of [appointed defense attorney].

[DEFENSE ATTORNEY]: I wasn't aware there was a motion so I have nothing to state.

RP (Feb. 20, 2008) at 10.

¶6 After further argument from Saunders, the following discussion occurred:

THE COURT: Any response, [prosecutor]? Has the State acted diligently?

[PROSECUTOR]: Your Honor, I don't have any personal knowledge, but I can tell you that each time the Court signed those documents the Court found that there was cause to continue the case. The State is -- I don't have any specific knowledge of due diligence, but presumably there is a prosecutor that was handling it and handling it correctly.

. . . .

THE COURT: Well, the explanation isn't as detailed as it might be, but there appears to be some explanation, although if the State is acting diligently, one might wonder better [sic] why someone in the negotiating unit has a case that's 155 days old. That may not be the State's fault. Two were at [appointed defense attorney's] request. Further negotiations, I don't know what that means. Apparently they've been fruitless.

. . . I'm going to grant one more continuance, last continuance without good explanation, which I haven't actually heard. I think this is a fairly simple case to try. I'm going to continue this to March 18th.

RP (Feb. 20, 2008) at 11-13.

¶7 But the signed order from February 20 states that the motion for continuance was "upon agreement of the parties

pursuant to CrR 3.3(f)(1)," states that the reason was "Prosecutor in trial," and was signed by the appointed defense attorney and the assigned prosecutor, neither of whom was at the hearing. CP at 64. Saunders again refused to sign the continuance form and the judge appears to have written on the continuance form, "Last con[tinuance] w[ith]-out good explanation." CP at 64. The February 20 written order, granting the State's request for a continuance, clearly contradicts the record because the matter was still with the assigned prosecutor, who was in the prosecutor's negotiating unit, Saunders did not agree to the continuance, and, as it turns out, Saunders's case was still assigned to the negotiating unit on March 18.

¶8 On March 18, the State moved for yet another continuance. The discussion was as follows:

THE COURT: . . . Today is the day set for trial and there's a request to continue this. Case to be reassigned.

[PROSECUTOR][5]: That's correct, Your Honor . . . on behalf of the State. This case is currently assigned to [assigned prosecutor], who was negotiating these cases. He thought it was going to be an agreed continuance.

THE COURT: Last time when we were here the prosecutor was in trial.[6] Who was the prosecutor at that time?

[PROSECUTOR]: I have no idea what that was about, Your Honor. I see it. I just don't know what it's about.

THE COURT: And I made a comment, too, that the last continuance was without a good explanation. The good explanation was what?

[PROSECUTOR]: [Assigned prosecutor] indicated that this matter had not been assigned to [trial prosecutor] for trial, so therefore we're asking for a continuance so it can be assigned to [trial prosecutor] and he can get it prepared for trial. Right now it's still in the negotiating phase.

---

[5] This was a different prosecutor than the one at the February 20 continuance hearing.

[6] The trial court appears to be reviewing the February 20 continuance order, which did not reflect the trial court's February 20 discussion on the record, except that the writing on the form says, "Last con[tinuance] w[ith]out good explanation." CP at 64.

[APPOINTED DEFENSE COUNSEL]: Your Honor, I thought we were going to trial today.

THE COURT: Well, [appointed defense counsel], anything else?

[APPOINTED DEFENSE COUNSEL]: My client did not wish to sign.

THE COURT: Well, prosecutor in trial, you're talking about [trial prosecutor]?

[PROSECUTOR]: I would assume that that's what that's about.

THE COURT: Then why wasn't it reassigned to him a month ago?

[PROSECUTOR]: I can't answer that.

[APPOINTED DEFENSE COUNSEL]: And I definitely don't have the answer to that.

RP (Mar. 18, 2008) at 14-15.

¶9 The trial court granted a final continuance, checking the box for a continuance that states, the continuance "is required in the administration of justice pursuant to CrR 3.3(f)(2) and the defendant will not be prejudiced in his or her defense" in order to allow assignment of the case to a prosecutor for trial. CP at 65. The court commented, "It appears to me this should have been reassigned a month ago. The last continuance without explanation, that's an explanation. So, Monday is March 24th, and [the trial prosecutor] will have to get up to speed quickly. It's a relatively simple case, I assume, at least factually." RP (Mar. 18, 2008) at 16. Saunders refused to sign this continuance form as well. The court called the trial to begin on March 24 but it then recessed until the beginning of voir dire on March 25.

THE COURT: . . . I'm not continuing your case until tomorrow. I'm recessing it until tomorrow. In other words, we have started the trial, and I'm recessing it until tomorrow morning to allow [the State] to finish up with another case . . . . I know it sounds like a technicality, but there is a difference between a continuance and a recess, so I have started your case.

RP (Mar. 24, 2008) at 16-17.

¶10 The jury convicted Saunders for failure to register as a sex offender. Saunders appeals. We consolidated his personal restraint petition with this appeal.

## ANALYSIS

¶11 Saunders argues that the trial court violated his constitutional speedy trial rights and CrR 3.3, and requests that we vacate his conviction and dismiss the charge against him.[7] We agree with Saunders that the trial court violated his speedy trial rights under CrR 3.3, thus, we do not reach his constitutional speedy trial right argument and other issues.

SPEEDY TRIAL

¶12 "[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). An appellate court "will not disturb the trial court's decision unless the appellant or petitioner makes 'a clear showing [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Downing*, 151 Wn.2d at 272 (alterations in original) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

¶13 A defendant has a right to a speedy trial under the Sixth Amendment and article I, section 22 of the Washington State Constitution. *See State v. Carson*, 128 Wn.2d 805, 820 & nn.63-64, 912 P.2d 1016 (1996). Although CrR 3.3(b)(1)(i) requires trial within 60 days when the defendant is in custody, this requirement " 'is not a consti-

---

[7] We ordered the State to file supplemental briefing on the speedy trial issues and Saunders's appellate counsel filed a supplemental reply brief. The State argues that Saunders waived the first three continuances and that the last two continuances for assignment of a prosecutor were for good cause under CrR 3.3(e)(3). Saunders's appellate counsel argues that the trial court abused its discretion when it granted the last two continuances without a valid explanation.

tutional mandate.' " *Carson*, 128 Wn.2d at 821 (quoting *State v. Terrovona*, 105 Wn.2d 632, 651, 716 P.2d 295 (1986)). Under CrR 3.3(h), the trial court must dismiss charges when the applicable speedy trial period has expired without a trial, but CrR 3.3(e) excludes the time allowed based on valid continuances and other delays from the speedy trial period.

¶14 When any period of time is excluded from the speedy trial period under CrR 3.3(e), the speedy trial period extends to at least "30 days after the end of that excluded period." CrR 3.3(b)(5). Excluded periods under CrR 3.3(e) include delays "granted by the court pursuant to section (f)." CrR 3.3(e)(3). A court may grant a continuance based on "written agreement of the parties, which must be signed by the defendant" or "[o]n motion of the court or a party" where a continuance "is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(1), (2). Furthermore, moving for a continuance "by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2). And granting defense counsel's request for more time to prepare for trial, even "over defendant's objection, to ensure effective representation and a fair trial," is not necessarily an abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984); *State v. Williams*, 104 Wn. App. 516, 523, 17 P.3d 648 (2001).

 ¶15 Here, defense counsel moved for the first two continuances to prepare for trial[8] without Saunders's personal consent. Then, over Saunders's personal objection and contrary to his desire to go to trial, both defense counsel and the State moved for a continuance on January 8 to continue negotiations and the trial court granted the con-

---

[8] A trial court's decision to grant a continuance for defense counsel to prepare for trial over the objection of the defendant is not an abuse of discretion where it is necessary "to ensure effective representation and a fair trial" and the trial court "made a proper record of reasons for failure to comply with CrR 3.3 time limits," finding delay through no fault of counsel " 'but because of the complexity and length of this case.' " *Campbell*, 103 Wn.2d at 14-15 (quoting former CrR 3.3(h)(2) (1980)).

tinuance without acknowledging counsel's duty under RPC 1.2(a) and its own duty to see that Saunders received a timely trial.[9]

■ ■ ¶16 The continuance granted on February 20 is also troubling. The trial court granted the continuance on February 20, absent any meaningful explanation from the State, stating, "I'm going to grant one more continuance, last continuance without good explanation, which I haven't actually heard. I think this is a fairly simple case to try." RP (Feb. 20, 2008) at 13. Although the trial court ruled on Saunders's motion to dismiss and discussed the earlier continuances, the trial court did not discuss its reason for granting the continuance on February 20. The continuance order reflects that it was brought by the State alone, "upon agreement of the parties pursuant to CrR 3.3(f)(1)" with the reason "Prosecutor in trial." CP at 64. This order is not supported by the record since it does not reflect what actually happened or what the State told the trial court about the need for a continuance at the February 20 hearing and it is internally inconsistent.[10] Moreover, there was no agreement to this continuance.

---

[9] Under RPC 1.2(a) "a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Because "the client controls the goals of litigation," where the client's goal is to go to trial and the client has rejected further negotiation, a strategy to delay trial for further negotiation is a breach of the attorney's ethical duties. *State v. Cross*, 156 Wn.2d 580, 613, 132 P.3d 80 (2006); *see* RPC 1.2(a). The client's goal determines the strategy available—for example, "A competent defendant may forbid counsel to put on a mitigation case if his goal is to have the death penalty imposed," but when the defendant decides he does "not wish to be put to death . . . the strategy is largely in the hands of his attorneys." *Cross*, 156 Wn.2d at 613; *see State v. Bergstrom*, 162 Wn.2d 87, 95-96, 169 P.3d 816 (2007). Trial courts should tread carefully and provide adequate explanation before granting a continuance where defense counsel moves for a continuance for further negotiation and the defendant objects to a continuance that will delay trial—that the State agrees to such a continuance does not relieve the trial court of its burden. CrR 3.3(f)(2); *see* CJC 3(C)(2); RPC 1.2(a), 8.4(a).

[10] CrR 3.3(f)(1) states, "Upon written agreement of the parties, which must be signed by the defendant." Saunders did not sign; on the defendant line it states, "Declines to sign Present in court." CP at 64. We note that CrR 3.3(f)(1) does not have a provision similar to CrR 3.3(f)(2), where "bringing of such motion by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2).

¶17 The shorter continuance granted on March 18 reflects a similar failure by the trial court to supply a reason for the trial continuance besides the State's failure to assign the case to a trial prosecutor and the trial court even noted, "It appears to me this should have been reassigned a month ago." RP (Mar. 18, 2008) at 16. The March 18 continuance order states that the motion was brought by the State alone, a continuance "is required in the administration of justice pursuant to CrR 3.3(f)(2) and the defendant will not be prejudiced in his or her defense" and the reason was "case to be reassigned to trial D[eputy] P[rosecuting] A[ttorney]." CP at 65. But, as on February 20, the prosecutor who presented the order did not know anything about the status of Saunders's case, other than that the negotiating prosecutor thought it was going to be an agreed continuance on the day set for trial.

¶18 While the assertion that a specific trial prosecutor "just got out of a seven-week-long trial" may serve as a legitimate reason for a continuance, the record here is clear that the State's delay was caused by a failure of the prosecutor's office to assign Saunders's case to a trial prosecutor once negotiations failed, which—according to Saunders—was before January 8 and even his attorney thought negotiations had concluded before March 18. RP (Mar. 18, 2008) at 16. Instead, Saunders's case remained in the negotiation unit until at least March 18 and the trial prosecutor's unavailability did not enter the discussion until the State requested a continuance on March 18.

¶19 *State v. Kenyon*, 167 Wn.2d 130, 216 P.3d 1024 (2009) compels our result here. The Washington Supreme Court recently reversed our decision and dismissed numerous unlawful firearm possession charges based on the trial court's failure to articulate an adequate basis of continuances beyond the speedy trial limits. *Kenyon*, 167 Wn.2d at 131-32, 138-39. In *Kenyon*, the trial court continued a trial for "[u]navoidable or unforeseen circumstances" where the trial judge was in a criminal trial and the second judge of the two judge county was on vacation. CrR 3.3(e)(8); *Kenyon*, 167

Wn.2d at 134. The Supreme Court held that the "trial court should have documented the availability of pro tempore judges and unoccupied courtrooms" because, under CrR 3.3(f)(2), it is "required to 'state on the record or in writing the reasons for the continuance' when made in a motion by the court or by a party." *Kenyon*, 167 Wn.2d at 139. The Supreme Court did not perform a prejudice analysis before vacating the convictions as it would in a claim of a constitutional speedy trial right violation. *Compare Kenyon*, 167 Wn.2d at 135-39 *with State v. Iniguez*, 167 Wn.2d 273, 281-85, 290-95, 217 P.3d 768 (2009).

¶20 CrR 3.3 provides "flexibility in avoiding the harsh remedy of dismissal with prejudice," including a "30-day buffer period" for excluded periods and a "one-time 'cure period' . . . that allows the court to bring a case to trial after the expiration of the time for trial period." *State v. Flinn*, 154 Wn.2d 193, 199 n.1, 110 P.3d 748 (2005); *see* CrR 3.3(b)(5), (g). But under CrR 3.3, once the 60 or 90 day time for trial expires without a stated lawful basis for further continuances, the rule requires dismissal and the trial court loses authority to try the case. CrR 3.3(b), (f)(2), (g)-(h). The rule's importance is underscored by the responsibility it places on the trial court itself to ensure that the defendant receives a timely trial and its requirement that criminal trials take precedence over civil trials. CrR 3.3(a)(1)-(2).

¶21 Here, Saunders consistently resisted extending time for trial while he was incarcerated awaiting trial on his failure to register charges. The continuances granted on January 8, February 20, and March 18 are without adequate basis or reason articulated by the State or defense counsel. Saunders's defense counsel and the State either agreed to a continuance for further negotiations, contested by Saunders, or relied on uninformed standby defense attorneys or assigned prosecutors to present contested orders—these standbys either did not know about the continuances or believed they were agreed continuances—and, when the trial court challenged them to state the basis

of the requested continuances, they admitted they knew nothing substantive about the status of the case.

¶22 Absent convincing and valid reasons for the continuances granted on January 8, February 20, or March 18, the trial court's orders granting the three continuances were " 'manifestly unreasonable, [and] exercised on untenable grounds [and] for untenable reasons.' " *Downing*, 151 Wn.2d at 272 (quoting *Junker*, 79 Wn.2d at 26). The trial court abused its discretion in granting further delays in commencing Saunders's trial. Under these circumstances, we reverse and remand for entry of an order dismissing the charge against Saunders under CrR 3.3(h).

¶23 Having resolved Saunders's appeal in this manner, we do not address his other assignments of error.

ARMSTRONG, J., concurs.

¶24 QUINN-BRINTNALL, J. (concurring in the result) — I concur with the result reached by the majority in this case, but I write separately because Christopher Saunders's statements on the record at the January hearing appear ambiguous. Saunders stated, "She's asking for another month for negotiations. I don't agree with that, Your Honor, especially since I've been here for the amount of time that I have been. If the prosecutor isn't willing to negotiate, I'm ready to go to trial." Report of Proceedings (Jan. 8, 2008) at 4. By this Saunders could be saying, as the majority apparently believes, that he was unwilling to negotiate and wanted to go to trial *or* he could be saying that his attorney had made an offer but because the deputy prosecutor handling the hearing was unable or unwilling to immediately agree to the offer, he wanted to go to trial. I concur in the result, however, because whether we analyze this case as (1) a continuance to allow for further negotiation over Saunders's express objection that his goal is to go to trial rather than pursue further negotiations, (2) an ineffective assistance of counsel claim because Saunders's attorney

requested a continuance to negotiate over Saunders's express objection that his goal is to go to trial rather than pursue further negotiations, (3) prosecutorial mismanagement, or (4) the trial court's failing to justify the delaying of Saunders's right to a timely trial on an adequate basis appearing in the record, the result is the same. *See* RPC 1.2(a) ("a lawyer shall abide by a client's decisions concerning the objectives of representation"); *State v. Kenyon*, 167 Wn.2d 130, 138-39, 216 P.3d 1024 (2009) (dismissing charges based on a trial court's failure to document an adequate basis for continuances beyond speedy trial limits); *State v. Cross*, 156 Wn.2d 580, 613, 132 P.3d 80 (stating that clients control litigation goals but not strategy), *cert. denied*, 549 U.S. 1022 (2006); *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993) (stating governmental misconduct supporting dismissal under CrR 8.3(b) "need not be of an evil or dishonest nature; simple mismanagement is sufficient"). The trial court did not set Saunders's trial date within the arbitrary[11] timely trial limits of CrR 3.3 and, under CrR 3.3(h), *Kenyon*, and *State v. Iniguez*, 167 Wn.2d 273, 217 P.3d 768 (2009), our Supreme Court has mandated that the charges against Saunders be dismissed with prejudice.

---

[11] CrR 3.3 makes no allowance for the nature and complexity of the case. Whether an incarcerated defendant is charged with failing to register as a sex offender or charged with one count of aggravated murder with more bodies being disentombed daily from his backyard, the rule requires that trial commence within 60 days.