IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 83438-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID CHRISTOPHER CALHOUN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — A jury convicted David C. Calhoun of rape of a child in the first degree, child molestation in the first degree, and child molestation in the second degree. Calhoun seeks reversal arguing that defense counsel was ineffective for failing to challenge a potentially biased juror, that the trial court erred in denying his motion for new counsel, that the trial court violated his speedy trial rights, and that insufficient evidence supports his child rape conviction. Calhoun also argues, and the State concedes, that the trial court erroneously imposed Department of Correction community custody supervision fees. We affirm Calhoun's convictions, but remand to strike the supervision fees.

FACTS

In 2005, David Calhoun married C.A.'s mother and became stepfather to C.A., born in 2004. The family lived in Tacoma from August 2013 to February 2015, in Spanaway from February to November 2015, in another house in

Spanaway from November 2015 to May 2016, and in Minnesota from May 2016 to November 2016. Calhoun and C.A.'s mother separated in Minnesota, returned to Washington, and divorced in April 2017.

In August 2017, when C.A. was 13 years old, C.A. disclosed to her mother that Calhoun had sexually abused her. C.A.'s mother confronted Calhoun, but did not take further action until 2018, when she discovered that C.A. had disclosed the sexual abuse to other individuals in online messages. C.A.'s mother then notified law enforcement and escorted C.A. to the hospital. C.A. submitted to a forensic interview, but no medical examination took place due to the amount of time that had passed between the sexual assaults and the date she went to the hospital.

The State charged Calhoun in an amended information with rape of a child in the first degree, child molestation in the first degree, and child molestation in the second degree. Calhoun's case was continued five times prior to trial. On January 28, 2019, May 30, 2019, and July 24, 2019, the court granted agreed continuances based on the prosecutor's unavailability for trial and the need to interview witnesses.

On September 30, 2019, defense counsel requested a continuance because he was in trial on another case, anticipated starting another trial immediately after, and would be on vacation for two weeks after that. Defense counsel also explained that he needed additional time to prepare for trial, particularly given that Calhoun faced a possible life sentence.[1] The prosecutor did

---

[1] The State originally gave notice that Calhoun faced life without the possibility of parole under RCW 9.94A.030(38)(b)(i) based on a 1990 conviction in California for lewd acts with a child under the age of 14 with force. At sentencing, the State informed the court that the information was insufficient to establish factual comparability.

not oppose the motion. Calhoun expressed frustration with the proposed continuance and asserted that the charges against him should be dismissed due to violation of his speedy trial rights. The court stated, "I don't have information in front of me that would suggest that your rights have been violated." Over Calhoun's objection, the trial court granted the continuance.

On November 13, 2019, the State and defense counsel presented a joint motion to continue the trial five additional days so defense counsel could interview C.A. Calhoun signed the proposed order. The trial court granted the motion.

Trial commenced on November 18, 2019, 342 days after Calhoun was arraigned. Calhoun immediately asked for a continuance and that he be appointed new counsel due to violation of his right to speedy trial. Calhoun stated that he had repeatedly asked his attorney to assert his speedy trial rights, but his attorney "refused on all accounts, telling me that it just wasn't the time" and "pretty much does whatever he wants to do." Calhoun also expressed displeasure with defense counsel's advice that he consider accepting the State's plea offer. The trial court, noting that a continuance would cause further delay, asked Calhoun why he wanted a continuance when his complaint was that his speedy trial rights had been violated. Calhoun explained that "what I would like to do is have grounds for dismissal; however, I don't know how to do the paperwork. But if I have somebody that will help me do that, then I believe I have the grounds for dismissal."

The trial court denied Calhoun's motion for new counsel and for a continuance. The court explained that CrR 3.3(f)(2) allows for cases to be continued over a defendant's objection when appropriate in the administration of

3

justice and when the defendant would not be prejudiced in his defense, as was the case with the September 30 continuance.  A few moments later, Calhoun again expressed his dissatisfaction with his attorney, calling him "a piece of shit" and saying "I don't want to talk to this guy."  The following day, Calhoun apologized on the record for his "outburst" and thanked the court for "hearing [him] out."

The case then proceeded to jury selection.  Several potential jurors, including juror 9, were questioned in open court but outside the presence of the remainder of the jury pool.  Upon questioning by the trial court, juror 9 stated that she was employed as a residential rehabilitation counselor at the Special Commitment Center (SCC) on McNeil Island.  Juror 9 stated that she did not provide sex offender treatment at SCC.  When the trial court asked juror 9 whether "[a]nything about [her] working with folks that have been found to be Sexually Violent Predators [ ] would affect [her] ability to serve as a juror in a case involving allegations of sexual offenses," she responded "No."  When asked whether she could separate "what knowledge she may have acquired from working with [her] current population to what [she] would be required to do . . . in the courtroom," juror 9 responded, "I believe I can."  Defense counsel then asked juror 9 if the offenders spoke with her about "their offenses, or [if] they talk about what's going on currently, their day-to-day stuff."  Juror 9 explained that she primarily works with patients with special needs, such as dementia or hearing impairment, and stated "[w]e don't talk about their offenses or whatever happened in the past."  During the remainder of jury selection the following day, defense counsel asked juror 9 if she agreed that the burden of proof is on the State, and she responded, "I do."  Neither

4

party exercised a peremptory challenge against juror 9 or challenged her for cause. Juror 9 was seated on the jury.

At trial, C.A. testified regarding three incidents of sexual abuse by Calhoun. The first incident occurred in the Tacoma house when C.A. was 8 years old. Calhoun summoned C.A. to his bedroom, laid her flat on the bed, and "started touching [her] chest and [her] vagina" with his hands for a "[c]ouple of minutes." The touching stopped when C.A.'s younger brother, who is largely confined to a wheelchair, called for help.

Next, C.A. testified about an incident that occurred at the first Spanaway house when she was 10 years old. Calhoun called C.A. to his bedroom, removed her clothes, bent her over the bed, and "started touching [her] butt" with his "hands and penis." She specified that Calhoun's penis touched the area "where you use your butt to go number two" and that "[i]t felt weird." C.A. remembered her "butt stinging" during the incident and confirmed that it was not stinging before the incident. The prosecutor asked C.A. if she remembered "whether he tried to put his penis inside [her] butt hole," and C.A. said "[y]es." On redirect examination, the prosecutor asked C.A. if it felt like a hand was touching her butt, and she said "[n]o." C.A. again confirmed that "the area where poop comes out" "stung" after the incident.

The third incident C.A. described took place at the second Spanaway house, a couple months before the family moved to Minnesota. Calhoun called C.A. to his bedroom, removed her clothes, placed her on her back, and "started

touching [her] chest and [her] vagina" with his hands. It stopped when her brother's school bus pulled up.

The jury found Calhoun guilty of rape of a child in the first degree, child molestation in the first degree, and child molestation in the second degree. The court imposed an indeterminate sentence of 216 months to life in prison and a lifetime term of community custody supervision upon release from prison. Although the court found Calhoun indigent and waived non-mandatory legal financial obligations (LFOs), Calhoun's judgment and sentence required him to "[p]ay supervision fees as determined by the Department of Corrections."

Calhoun timely appealed.

ANALYSIS

I. Ineffective Assistance of Counsel

Calhoun argues that defense counsel rendered constitutionally ineffective assistance by failing to ensure he received a trial by a fair and impartial jury. We disagree.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish a claim of ineffective assistance of counsel, a defendant must establish (1) that their attorney's representation fell below an objective standard of reasonableness and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been

6

different. State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995). If a defendant fails to establish either element, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Calhoun argues that counsel performed deficiently by failing to make anything other than a superficial and cursory inquiry regarding the extent of juror 9's daily exposure to offenders committed to the SCC as sexually violent predators and her opinions formed as a result of that contact with that population. He points out that defense counsel never followed up during general voir dire to ask juror 9 whether she could be fair and impartial in a case involving allegations of child rape and child molestation. Calhoun claims that no tactic or strategy could explain this failure, and that "the presence of a juror with a very strong potential for actual bias" requires reversal.

A criminal defendant has a constitutional right to an unbiased jury trial. State v. Irby, 187 Wn. App. 183, 192–93, 347 P.3d 1103 (2015). "Seating a biased juror violates this right." State v. Guevara Diaz, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020). A juror may be challenged for cause based on either actual or implied bias.[2] RCW 4.44.170. "Actual bias" is defined as "the existence of a state

_____

[2] Under RCW 4.44.180, a juror holds "implied bias" if related by family to a party, possesses some economic relationship to a party, served as a juror in a case involving identical facts, or has

7

of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). To sustain a challenge based on actual bias, "'the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.'" State v. Lawler, 194 Wn. App. 275, 281, 374 P.3d 278 (2016) (quoting RCW 4.44.190).

Here, the record shows that the trial court thoroughly questioned juror 9 to determine whether her personal experiences as an SCC counselor might affect her ability to be fair and impartial. In response, juror 9 unequivocally responded that nothing about her job would affect her ability to serve as a juror in a case involving sex offenses and that she believed she could separate knowledge she acquired working with SCC residents from what would be required of her as a juror in the courtroom. And when defense counsel followed up by asking whether SCC residents discuss their offenses with her, juror 9 explained that she works with offenders with special needs and that they do not discuss what happened in the past. Based on this exchange, it was objectively reasonable for defense counsel to conclude that juror 9 could be fair and impartial towards Calhoun. Therefore, defense counsel did not render deficient performance by making the tactical decision not to question or challenge juror 9 further.

---

an "interest" in the subject matter of the case. Calhoun does not argue that juror 9 manifested "implied bias."

8

II.     Motion for New Counsel

Calhoun argues that the trial court erred in denying his motion to appoint new counsel. We review a trial court's refusal to appoint new counsel for an abuse of discretion. State v. Lindsey, 177 Wn. App. 233, 248, 311 P.3d 61 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Id. at 249.

The constitutional right to effective assistance of counsel does not provide indigent defendants with an absolute right to select a particular advocate. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). A defendant dissatisfied with appointed counsel "must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." State v. Stenson (Stenson I), 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). The trial court must consider the reasons given for the dissatisfaction, the court's own evaluation of counsel, and the effect of any substitution upon the scheduled proceedings. Id. at 734. "A disagreement over defense theories and trial strategy does not by itself constitute an irreconcilable conflict entitling the defendant to substitute counsel, because decisions on those matters are properly entrusted to defense counsel, not the defendant." State v. Thompson, 169 Wn. App. 436, 439, 290 P.3d 996 (2012) (citing In re Pers. Restraint of Stenson (Stenson II), 142 Wn.2d 710, 734, 16 P.3d 1 (2001)). "Counsel and defendant must be at such odds as to prevent presentation of an adequate defense." State v. Schaller, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007). Upon review, we consider (1) the extent of the conflict, (2)

the adequacy of the trial court's inquiry into the conflict, and (3) the timeliness of the motion. (Stenson II), 142 Wn.2d at 723–24.

Calhoun argues that his right to counsel was violated because he made it clear to the trial court that there had been a complete breakdown in the attorney-client relationship. In particular, Calhoun contends that the trial court failed to conduct an adequate inquiry into the nature and extent of the conflict and breakdown before summarily denying his motion.

A trial court conducts an adequate inquiry by allowing the defendant to express their concerns fully. Schaller, 143 Wn. App. at 271. The court "'may need to evaluate the depth of any conflict between the defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to prepare, and any delay or inconvenience that may result from substitution.'" State v. Thompson, 169 Wn. App. 436, 462, 90 P.3d 996 (2012) (quoting United States v. Adelzo-Gonzales, 268 F.3d 772, 777 (9th Cir. 2001)). However, "[f]ormal inquiry is not always essential where the defendant otherwise states [their] reasons for dissatisfaction on the record." Schaller, 143 Wn. App. at 271.

Calhoun supports his claim by citing to State v. Lopez, 79 Wn. App. 755, 904 P.2d 1179 (1995). In Lopez, the defendant told the trial court that "I want a different attorney because this one isn't helping me at all." Id. at 764. The trial court summarily denied the request without inquiring into the defendant's reasons for his dissatisfaction. Id. The Lopez court held that the trial court abused its discretion by "failing to inform itself of the facts on which to exercise its discretion."

Id. at 767. Here, in contrast, the record indicates that Calhoun's dissatisfaction was based primarily on defense counsel's failure to assert his speedy trial rights. Accordingly, Lopez is distinguishable and does not control our review here.

The trial court asked Calhoun why he wanted a continuance to appoint new counsel when his complaint was that his speedy trial rights had been violated. Calhoun responded that he wanted the trial court to appoint counsel who would move to dismiss the charges against him based on the alleged speedy trial violation. When the trial court denied the motion, Calhoun again attempted to argue that his speedy trial rights had been violated, and the court explained that the issue would be preserved for appeal. Under these circumstances, the trial court's inquiry provided a sufficient basis for reaching an informed decision. Although Calhoun disagreed with defense counsel's decision not to move for dismissal based on violation of speedy trial rights, we cannot say that the disagreement resulted in "the complete denial of counsel." Stenson II, 142 Wn.2d at 722. The court did not abuse its discretion in denying Calhoun's motion for new counsel.

III.    Speedy Trial

Calhoun first argues that the trial court violated the time-for-trial rule in CrR 3.3 by granting multiple continuances without a valid basis. A trial court's application of CrR 3.3 is reviewed de novo. State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). We review a trial court's decision to grant a continuance for an abuse of discretion. Id. at 822–23.

11

The time-for-trial rule "is not a constitutional mandate." State v. Terrovona, 105 Wn.2d 632, 651, 716 P.2d 295 (1986). A defendant held in custody pending trial must be tried within 60 days of arraignment. CrR 3.3(b)(1)(i). Continuances granted by the trial court are excluded from the computation of time. CrR 3.3(e)(3). The trial court may grant a continuance based on "written agreement of the parties, which must be signed by the defendant" or "[o]n motion of the court or a party" where a continuance "is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(1), (2). The court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2). Moving for a continuance "by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2). A trial court does not necessarily abuse its discretion by granting defense counsel's request for more time to prepare for trial to ensure effective representation and a fair trial, even over defendant's objection. State v. Saunders, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009).

Calhoun argues that the trial court abused its discretion by continuing his case past May 30 and July 24, 2019 based on the prosecutor's unavailability for trial and the need to interview witnesses. "In exercising its discretion to grant or deny a continuance, the trial court is to consider all relevant factors." State v. Heredia-Juarez, 119 Wn. App. 150, 155, 79 P.3d 987 (2003). "When a prosecutor is unavailable due to involvement in another trial, a trial court generally has discretion to grant the State a continuance unless there is substantial prejudice to the defendant in the presentation of his defense." State v. Chichester, 141 Wn.

App. 446, 454, 170 P.3d 583 (2007). Calhoun contends that the court should have conducted a more thorough inquiry to determine whether the prosecutor would really be unavailable or why the interviews had not been completed. But Calhoun did not object to either continuance. Nor has he articulated prejudice to his defense as a result of the delay.

Calhoun further argues that the trial court abused its discretion by granting defense counsel's September 30, 2019 request for a continuance over his strenuous objection. He contends the reasons for the delay (being in trial on other cases, a scheduled vacation, and trial preparation) were not sufficiently compelling, given that his case was not particularly complex and did not involve forensic evidence. But trial preparation and scheduling conflicts, including reasonably scheduled vacations, are valid reasons for granting continuances. State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005). Calhoun analogizes his case to Saunders, 153 Wn. App. 209. In Saunders, the trial court abused its discretion by granting three continuances pursuant to CrR 3.3(f)(2) "without adequate basis or reason articulated by the State or defense counsel." Id. at 220. Here, unlike Saunders, the record shows that the parties articulated a valid reason for each continuance. The court did not violate Calhoun's CrR 3.3 speedy trial rights.

Calhoun also argues that the 11-month delay violated his constitutional right to a speedy trial. We review an alleged violation of a defendant's Sixth Amendment right to a speedy trial de novo. Ollivier, 178 Wn.2d at 826. If a defendant's

constitutional speedy trial right is violated, the remedy is dismissal of the charges with prejudice.  State v. Iniguez, 167 Wn.2d 273, 282, 217 P.3d 768 (2009).

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution provide criminal defendants with the right to a speedy trial.  "[T]he affirmative burden is on the state, not on the defendant, to see that a trial is held with reasonable dispatch."  State v. Ross, 8 Wn. App. 2d 928, 941, 441 P.3d 1254 (2019) (alterations in original) (quoting State v. Sterling, 23 Wn. App. 171, 173, 596 P.2d 1082 (1979)).  To determine whether a constitutional speedy trial violation occurred, we employ the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).  In order to trigger the Barker analysis, the defendant must show presumptively prejudicial delay.  Id. at 530.  "[W]hether a delay is presumptively prejudicial is necessarily a fact-specific inquiry dependent on the circumstances of each case."  Iniguez, 167 Wn.2d at 291.  If a defendant meets this threshold test, the court then considers four nonexclusive factors to determine if the delay constitutes a constitutional violation: (1) the length of the delay, (2) the reason for the delay, (3) whether and to what extent the defendant asserted their speedy trial rights, and (4) whether the delay caused prejudice to the defendant.  Barker, 407 U.S. at 530–32.

Here, even assuming that the 342-day delay between arraignment and trial exceeds the bare minimum needed to trigger a Barker analysis, we conclude that no constitutional speedy trial violation occurred.  First, the delay was not exceptionally long.  See Ollivier, 178 Wn.2d at 828–29 (describing a number of

speedy trial challenges involving delays ranging from 21 months to 6 years as not "exceptionally long."). Second, defense counsel and the State articulated valid reasons for each continuance. Third, Calhoun objected to only one of the five continuances. Fourth, Calhoun has not established prejudice. "Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense." Iniguez, 167 Wn.2d at 295. Because prejudice is difficult to prove, we presume it intensifies over time. Id. The 11-month delay does not rise to the level of particularized prejudice needed to justify dismissal of the charges, and Calhoun's defense was not impaired by the passage of time. Calhoun's constitutional right to a speedy trial was not violated.

IV.    Sufficiency of the Evidence

Calhoun challenges the sufficiency of the evidence to support his conviction for rape of a child in the first degree. The record does not support Calhoun's claim.

Due process requires the State to prove beyond a reasonable doubt every essential element of a crime. State v. Marohl, 170 Wn.2d 691, 698, 246 P.3d 177 (2010). Our review on a challenge to the sufficiency of the evidence in a criminal case is highly deferential to the jury's decision. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that may be drawn from it. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). "Evidence is sufficient

to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).

"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). The term "sexual intercourse" is defined as having "its ordinary meaning" and includes "any penetration of the vagina or anus however slight." RCW 9A.44.010"(14)(a), (b). Proof that the defendant penetrated the victim's buttocks, but not the anus, is insufficient to sustain a conviction for rape of a child in the first degree. State v. A.M., 163 Wn. App. 414, 421, 260 P.3d 229 (2011).

Calhoun, relying on A.M., contends that reversal is required because the State failed to prove that he actually penetrated C.A.'s anus. In A.M., the victim testified that the defendant "stuck his wiener in my poop-butt" and "it felt bad." Id. at 417. However, when the prosecutor asked for details regarding the extent of the contact, the victim said it "just touched the outside part where it's almost inside." Id. at 417–18. Because the victim's testimony established that the defendant's penis touched the buttocks but not the anus, and penetration of the buttocks alone is insufficient to constitute "sexual intercourse," the A.M. court concluded that the State had not proved that penetration occurred beyond a reasonable doubt. Id. at 421.

16

Here, unlike A.M., C.A. testified that Calhoun's penis touched "the area where you use your butt to go number two" and that he "tried to put his penis inside [her] butt hole." C.A. specified that "the area where poop comes out" was "stinging" during the incident and confirmed that it was not stinging before the incident. Viewed in the light most favorable to the State, this evidence was sufficient to establish the penetration definition of the sexual intercourse element of rape of a child in the first degree.

V.     Community Custody Supervision Fees

Finally, Calhoun contends that the trial court waived all discretionary LFOs, but that the judgment and sentence erroneously requires him to pay community custody supervision fees to the Department of Corrections. The State concedes that this condition should be stricken because Calhoun was indigent, and the sentencing court clearly intended to impose only mandatory LFOs. See State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020) (striking supervision fees imposed on an indigent defendant where "[t]he record demonstrate[d] that the trial court intended to impose only mandatory LFOs."); accord State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021). We accept the State's concession and direct the trial court to strike the community custody supervision fees from Calhoun's judgment and sentence.

We affirm Calhoun's convictions, but remand to the trial court to amend his judgment and sentence.

WE CONCUR: